Tukley, J.
delivered the opinion of the court.
The complainant, in the life time of Henry Hart, became bound as his surety for a considerable sum of money, which he was compelled to pay; and obtained against him judgments for the same, and issued executions, which were returned nulla bona,. These judgments have been revived against Brien, his administrator.
This bill is filed to obtain satisfaction of said judgments, out *369 of two slaves, George and Jacob, conveyed to the defendants, William and Samuel Williams and Sampson Brasswell, by said Hart, along with three tracts of land, and a town lot in Smithville, and, also, out of certain notes, or choses in action, transferred by said Hart to William and Samuel Williams, upon the ground, that said conveyance and transfer, were made fraudulently, with the covinous purpose and intent to hinder and delay and defeat the complainant, and other creditors, in the collection of their debts. The answer of the defendants denies, in terms, this fraudulent purpose and intent, and relies upon the statute of limitations, and the possession of the personal property adversely for three years.
Two questions present themselves for consideration.
1st. Was the conveyance fraudulent as against creditors?
And 2nd. If fraudulent, are the defendants protected by an adverse possession of the property for three years?
And, first, was the conveyance of the three tracts of land, the town lot, and the two negro men fraudulent as against creditors? We learn from the answers, as well as from the proofs, that Hart, at the time of the conveyance, was indebted to the point of insolvency; that the price stipulated to be paid for the negroes, $1,200, and for the land $1,000, was not afull price; the answers on that point, stating, only, that it was as much as the property would have brought at sheriff’s sale, and the proof establishing, that the slaves were worth, in cash, $1,500 or $1,600, and the land, greatly more than a thousand dollars. We learn from the same sources, that only eight hundred dollars was paid at or about the time, and the balance was payable in one, two and three years, and that the property continued, as before in the possession of Hart, he having agreed to hire the sTaves, and rent the lands. It appears further, that on the day on which the conveyance was acknowledged before the clerk, namely, the 7th December, 1840, Hart made a deed of trust of a wagon, several horses, and other personal property, to defendant Brasswell, to secure him and save him harmless for his endorsements in bank for Hart, to the amount of about $400, the very endorsements which, according to the allegations of the answer, constituted a part of the consideration *370 for the conveyance of the land and negroes; the defendant, according to the answer, having taken upon himself to pay that debt; thus showing, that so far as Brassweli was concerned, it was understood, at the time of the conveyance of the land and negroes, that Brassweli was not really to pay the bank debts, hut Hart himself was to pay them. And the defendants, the Williams’, who went into bank to raise the money to pay the $800, afterwards stated to a witness, Pistole, that it had been agreed by Hart, that he would pay the calls upon their notes. Not long after' these conveyances the defendants procured an execution to be levied upon all the balance of Hart’s property, which they caused to be sold, and which they purchased, leaving the property in his possession, upon his promise to pay them for it. And thus, they became apparent owners of all his property. The three defendants, were the brothers-in-law of Hart. Thus the transaction as above set forth, contains all the badges of fraud usually mentioned in cases arising under the statutes of Elizabeth. A vendor indebted to insolvency; all his property conveyed; retaining possession as before; the price not a full one, but inadequate; the vendees, near relations; the price stipulated not paid down, but a long-credit given, although the ostensible motive of the sale was to place Hart in funds to pay his debts; the conveyance made to three persons jointly, of property not convenient to be held and enjoyed in that mode, and which they pretended to rent and hire to the insolvent vendor.
These general outlines are enough to stamp the true character of the transactions, without attempting to impart to it those minute touchings and shadings, which the details of the testimony would warrant. We have no doubt that the conveyance in question must be held to be fraudulent as against the complainant and other creditors.
The next enquiry is, are the defendants protected by three years adverse possession? The bill alledges, and the proof and circumstances show, that some of the above evidences of fraud were concealed by the defendants, and did not come to the knowledge of the complainant, till within three years of the filing of the bill: some others of them must have been known *371 to him earlier. But we are relieved from the embarrassment of considering the effect of this state of things in reference to the rights of the parties under the statute of limitations. Because we are all of opinion, that the evidence does not show a continued adverse possession of the slaves for three years before suit brought — documents made by the parties themselves and in their possession, and not shown to the public, till within the three years — represent them to have been hired by the defendants to Hart for the years 1841 and 1842; while it is shown in proof, that one of them, Jacob, had been run off to a free State, Illinois, as early as 1841; and the other during a great part of the time was not publicly used and employed as a slave by either the defendants or Hart, but secreted and concealed by Hart, or by the defendants, or by both, during 1841 and 1842. In whose actual possession he was, was a fact unknown to the public. The open, adverse, and continued possession of such property, by one claiming to be owner, is a fact to be made out affirmatively by him who insists upon the protection of the statute. This has not been done in the present case. There seems to have been no open and public possession of the slaves by any body.
The defendants, therefore, having no valid title by the deed, have failed to prove, and make out a title by the statute of limitations. The decree, therefore, of his Honor the Chancellor, so far as it subjects the negro slave George to be sold for the satisfaction of the complainant’s debt, is well sustained by the facts and circumstances of the case; but so much of the decree as peremptorily orders the notes or choses in action, assigned by Hart to the Williams’, to be delivered up, and the receiver to pay the proceeds to the complainant, and other creditors of Hart, we are unable to sustain.
The statutes of Elizabeth, and our act of 1801, enable the-creditor to subject the specific property, fraudulently conveyed, while in the hands of the fraudulent donee or vendee, to the satisfaction of his claim, but they do not enable him to claim the proceeds of such property.
This principle is most plain and obvious. If the complainant, on grounds of general equity or allegations of trust, or of a *372 recent statute, independent of the statute offrauds, seeks to reach the choses in action, he must show such equity or trust, and cannot compel the defendants to pay or surrender what ex equo et bona, they may in conscience retain. If the defendants paid money for Hart, and he transferred to them the legal title of the notes in question for their indemnity, the notes cannot equitably be taken out of their hands, when the specific property is taken away, upon the mere ground, that in the conveyance of such specific property, the parties committed a fraud against creditors. Whether, therefore, the notes be regarded as the proceeds of the slave Jacob, or as given for money actually expended by the defendants for Hart, they cannot be reached in their hands, if they are of no greater value than the sums which they have advanced actually in the payment of Hart’s debts.
With this modification, the decree of the Chancellor will be affirmed.